IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## MICHAEL W. SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-28443     Chris Craft, Judge**

**No. W2005-00246-CCA-R3-PC  - Filed December 14, 2005**

The petitioner, Michael W. Smith, appeals the denial of his petition for post-conviction relief, raising as his sole issue whether trial counsel was ineffective for failing to properly prepare and investigate his case.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Michael W. Smith.

Paul G. Summers, Attorney General and Reporter; Brian C. Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alana Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 13, 1997, the petitioner entered best interest guilty pleas to two counts of rape, two counts of aggravated burglary, and five misdemeanor offenses.  Michael Wade Smith v. State, No. W1999-01817-CCA-R3-PC, 2000 WL 1664262, at *1 (Tenn. Crim. App. Oct. 23, 2000).  Pursuant to his guilty plea agreement, he received concurrent sentences of ten years for each of the rape convictions, six years for each of the aggravated burglary convictions, and eleven months, twenty-nine days for each of the misdemeanor convictions, for an effective sentence of ten years in the Department of Correction.  Id.  In a subsequent petition for post-conviction relief, the petitioner alleged ineffective assistance of counsel and that his guilty pleas were unknowing and involuntary. Id.  Because the record revealed that the second rape and aggravated burglary offenses were committed while the petitioner was out on bond for the initial charges and thus that the guilty plea agreement violated Tennessee Code Annotated section 40-20-111(b), which requires that the

sentence for a felony committed while on bail be served consecutively to the sentence for the initial felony charge, this court remanded the case to the trial court with instructions that the petitioner be allowed to withdraw his guilty pleas. Id. at *3.

Following the appointment of new trial counsel, the petitioner pled guilty on April 29, 2003, to one count of rape and one count of attempted rape in exchange for consecutive sentences of eight years at 100% for the rape conviction and three years at 30% for the attempted rape conviction, for an effective sentence of eleven years in the Department of Correction. The remaining charges were dismissed. On May 12, 2004, the petitioner filed a *pro se* petition for post-conviction relief alleging, *inter alia*, that he was denied the effective assistance of counsel and that his guilty pleas were unknowing and involuntary. Post-conviction counsel was appointed and an amended petition for post-conviction relief was filed on July 28, 2004. Although the petitioner raised a number of different grounds for relief and various allegations of ineffective assistance of counsel in his original and amended petitions, he confines himself on appeal to arguing that his trial counsel was ineffective for failing to properly prepare and investigate his case.

At the September 24, 2004, evidentiary hearing, trial counsel testified that approximately 90% of his private law practice involved criminal defense. He said he met with the petitioner on different occasions, including several meetings at the jail and a number of short meetings in the courthouse on the petitioner's report dates. In addition, he always accepted the petitioner's telephone calls if he was in his office and therefore spoke with the petitioner about the case by telephone on several different occasions. Trial counsel said he thoroughly discussed every aspect of the case with the petitioner.

Trial counsel further testified he reviewed discovery, which ultimately included the statements of the victims and the potential alibi witnesses; consulted with a DNA expert; and employed the services of an investigator who, among other things, investigated the crime scene and the petitioner's alibi defense, which proved unsupportable. Trial counsel said the strength of the State's case, which included damaging DNA evidence as well as a positive identification of the petitioner by one of the rape victims, led him to conclude it was in the petitioner's best interest to plead guilty and that he had extensive discussions with the petitioner about that fact.

Trial counsel acknowledged he did not request an investigator until March 2003. He explained, however, that he did not believe an investigator was necessary under the circumstances of the case. Trial counsel testified he requested the investigator only after it appeared that a plea agreement might not be reached:

Well, based on the fact that what I had already read in the files and the strength of the State's case, I was not sure that he would really receive any benefit from an investigator. However, when it [be]came clear that I was going to probably have to encounter an out of state witness, which I think may have been [one of the rape victims], at that point I felt it necessary to have her interviewed. We had obtained at some point in the discovery, her statement. So, I did have that. And, I

-2-

think my first, quite frankly, my first, I guess assumption on that, that an investigator would not probably help this case was correct, after what they found.

Trial counsel testified he eventually decided not to have his investigator contact the victim because he was again involved in plea negotiations with the State and feared that the victim, if contacted, would insist that the case proceed to trial. Trial counsel said he discussed those concerns with the petitioner and that he agreed that the victim should not be contacted. Trial counsel stated that his investigator interviewed the potential alibi witnesses only to learn that their accounts were consistent with their statements to the district attorney's office, which trial counsel had already reviewed. According to trial counsel, neither potential witness was able to provide an alibi for the petitioner during the times of the offenses.

On cross-examination, trial counsel acknowledged the DNA results showed a 1 in 555,000 probability in the Caucasian population of someone other than the petitioner as the source for the DNA evidence. He said he conveyed every offer from the State to the petitioner and it was the petitioner's decision to plead guilty.

Ronald L. Lax, the defense investigator assigned to the petitioner's cases, acknowledged that trial counsel instructed him not to interview the rape victims. On cross-examination, he testified that he met with the petitioner twice and that another investigator from his office met with the petitioner four times. Lax stated that, during one of his meetings with the petitioner, he and trial counsel informed him of their belief that it was not in his best interest for them to contact the rape victim. According to Lax, the petitioner placed a lot of emphasis on discrepancies between the rape victim's initial description of her attacker and his appearance, and in particular on the fact that the victim had described her attacker as a shorter man. Nonetheless, the victim had subsequently identified the petitioner from a photographic lineup, and Lax therefore did not believe that the height discrepancy was pertinent. Lax testified the petitioner agreed that they should not contact the victim.

The petitioner testified he agreed to plead guilty only on the condition that trial counsel first contact the victim to determine if she planned to stand by her initial description of her attacker. The petitioner said that had the victim stood by her initial description, which did not match his appearance, he would have insisted on going to trial. However, trial counsel told him on a Tuesday that he had contacted the victim and that "nothing beneficial came out of it." The petitioner testified that he did not learn until that Friday that trial counsel had not, in fact, contacted the victim. The petitioner conceded that, notwithstanding, he entered his guilty pleas on April 29, 2003. He further conceded that he informed the post-conviction court at the plea colloquy that he understood what he was doing in entering his guilty pleas and that he was satisfied with counsel's representation. When questioned by the court, the petitioner acknowledged that counsel met with him at the jail on three or four occasions and at almost every court appearance, that he freely discussed the case with trial counsel, and that trial counsel provided him with copies of discovery.

On January 4, 2005, the post-conviction court entered a detailed written order denying the petition for post-conviction relief. Among other things, the court accredited trial counsel's testimony

with respect to the number of meetings and conversations he had with the petitioner and his level of preparation and investigation of the case. Accordingly, the post-conviction court concluded that the petitioner had not met his burden of demonstrating he was denied the effective assistance of trial counsel.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong

of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

### III. Claims of Ineffective Assistance of Counsel

The petitioner argues that trial counsel was ineffective for failing to properly prepare for and investigate the case. Specifically, he asserts that counsel was defective for failing to litigate any motions, to adequately discuss the case with him, to investigate the alibi witnesses, and to interview the rape victims. The petitioner contends that the cumulative effect of these alleged deficiencies "gives rise to reasonable probability that the outcome of the case would have been different."

The record in this case, however, fully supports the post-conviction court's finding that the petitioner received effective assistance of counsel. Trial counsel's testimony, which was accredited by the post-conviction court, established that he spent extensive time in his investigation and preparation for the case, which included filing appropriate motions, reviewing discovery, and fully discussing the case with the petitioner both in person and over the telephone. Trial counsel reviewed the strong evidence against the petitioner, which included transcripts of the State's interviews with the victims and the potential "alibi" witnesses, whose statements did not support the petitioner's account of his whereabouts during the time that the offenses occurred. He believed that it was in the petitioner's best interest to seek a plea bargain and that it would hurt the petitioner's chances of getting a successful plea offer if they attempted to contact the victim. Trial counsel said he explained his rationale to the petitioner and the petitioner agreed with his decision. Ronald Lax, the investigator appointed to assist trial counsel, corroborated that the petitioner was fully informed of their reasons for not contacting the victim and that the petitioner was in agreement with that decision. Finally, trial counsel testified that he explained the plea agreement to the petitioner and that the petitioner indicated he understood the agreement, was satisfied with counsel's representation, and wanted to plead guilty. In sum, there is no evidence that counsel was deficient in his representation or that the petitioner would not have pled guilty were it not for counsel's alleged deficiencies. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

### CONCLUSION

We conclude that the petitioner has failed to meet his burden of demonstrating he was denied the effective assistance of trial counsel. Accordingly, we affirm the post-conviction court's denial of the petition.

ALAN E. GLENN, JUDGE